YATES, Presiding Judge.
The State Department of Human Resources (“DHR”); the Calhoun County Department of Human Resources (“Calhoun County DHR”); Bill Fuller, as commissioner of DHR; the Alabama State Personnel Department; and Thomas G. Flowers, as director of the State Personnel Department (hereinafter collectively referred to as “the defendants”), petition this court for a writ of mandamus directing a judge of the Montgomery Circuit Court to vacate his order issued on March 11, 2004, denying the defendants’ motion to dismiss, or, in the alternative, motion for a summary judgment based on the ground of sovereign immunity. In 1998, Laura Johnson-Price was appointed director of Calhoun County DHR. Johnson-Price contends that Calhoun County DHR had attempted to reject her as a candidate for *1167 the director’s position. However, because she had a higher ranking in the state merit system than the other eligible candidates who had expressed an interest in the position, she was eventually appointed to the position. Before she was appointed as director, Johnson-Price had served as assistant director of Calhoun County DHR. While she was serving as assistant director, Johnson-Price had filed a complaint with DHR, claiming racial discrimination and discrimination based on her opposition to what she believed was an unlawful discriminatory employment practice by the then director of Calhoun County DHR, Erin Snowden. Johnson-Price had also filed complaints with Calhoun County DHR and former DHR Commissioner Martha Nachman, and her predecessor, acting DHR Commissioner P.L. Corley.
Effective September 1,1996, Erin Snow-den retired as director of Calhoun County DHR. On October 4, 1996, the director of DHR’s Civil Rights and Equal Employment Division issued a detailed letter of determination, finding: (1) that former director Snowden had retaliated against Johnson-Price in several respects; (2) that the Calhoun County DHR Board knew or should have known of Snowden’s retaliatory treatment against Johnson-Price; (3) that the Calhoun County DHR Board Chairman, Melissa Truitt, had “acted in concert” with Snowden in carrying out the retaliatory acts against Johnson-Price; (4) that DHR’s then Commissioner Martha Nachman, and her predecessor, P.L. Cor-ley, having knowledge of the discrimination against Johnson-Price, had taken “steps and [had] made recommendations they believed to be reasonably calculated to eliminate and remedy the effects of the discriminatory retaliatory treatment” but that those steps had been “rendered ineffective due to limitation placed on their authority to control or prohibit the conduct of [former Director] Snowden.” The remedy recommended by the director of the DHR’s Civil Rights and Equal Employment Division was to purge Johnson-Price’s files of certain appraisal reports completed by Snowden and to prevent the next director of Calhoun County DHR from retaliating against Johnson-Price. No determination was made on Johnson-Price’s claim of racial discrimination “because of prohibitions imposed by the Court. As moved by [Johnson-Price]’s attorney, the Court precluded [the Civil Rights and Equal Employment Division] from taking investigatory actions necessary to answer such charges.”[1]
On December 3, 2003, Johnson-Price filed a petition for a common-law writ of certiorari[2] against DHR, Calhoun County DHR, the State Personnel Department, and Fuller and Flowers, in their official *1168 capacities,[3] alleging in pertinent part:
“18. Following her 1998 appointment as Calhoun County Director by [Calhoun County DHR], [Johnson-Price] enjoyed outstanding employment appraisals, each of which reflected that she either exceeded the expectations of [Calhoun County DHR] and [DHR] or she consistently exceeded the expectations of the [Calhoun County DHR] and [DHR] in performing her assigned duties.
“19. Those ratings indicated to [Johnson-Price], as it would to any reasonable person, that her job performance was satisfactory and consistent with [Calhoun County DHR]’s and [DHR]’s expectations for her job performance.
“20. Notwithstanding [Johnson-Price]’s proficiency in performing her job as Calhoun County DHR director, ever since [Johnson-Price]’s appointment as Calhoun County DHR director, the [Calhoun County DHR] Board has continued to mistreat [Johnson-Price].
“21. [The Calhoun County DHR] Board’s mistreatment of [Johnson-Price] included, but was not limited to the following: (1) publicly questioning [Johnson-Price]’s truthfulness and veracity without any justification; (2) engaging in conduct to demean and undermine [Johnson-Price] in the eyes of subordinate employees; (3) forbidding [Johnson-Price] from bringing subordinate employees to [the Calhoun County DHR] Board meetings to assist [Johnson-Price] where said employees’ presence was often necessary for an efficient exchange between [Johnson-Price] and [the Calhoun County DHR] Board; and (4) routinely withholding, until the day of the meeting, notification of [the Calhoun County DHR] Board meetings which [Johnson-Price] was required to attend and make reports to the [Calhoun County DHR] Board.
“22. On information or belief, acting in concert with [the Calhoun County DHR] Board, around October 2003, [DHR Commissioner] Fuller or his agents directed the creation of the position of Quality Control Program Consultant with [DHR].
“23. On information or belief, said position was created solely for the purpose of displacing [Johnson-Price] from her position as [Calhoun County DHR] director.
“24. On information or belief, thereafter, on October 31, 2003, Defendants used the Merit System’s transfer provisions codified in § 36-26-24 [Ala.Code 1975] as a pretext or ruse to remove [Johnson-Price] from her position as director of [Calhoun County DHR] where no merit based reason existed to justify [Johnson-Price]’s removal.
“25. Defendants directed that effective November 15, 2003, [Johnson-Price] was transferred to a position with [the DHR] Quality Control Unit, located in Birmingham, Alabama, a distance which is approximately seventy (70) miles from [Johnson-Price]’s current office.
“26. Defendants’ pretextual transfer of [Johnson-Price] violates the rules of [the] State Personnel Dept. See Ala. Ad-mimCode R. 670-X-4-.01.[4]
*1169 [[Image here]]
“28. At all relevant times, dating back to October 4, 1996 when [DHR]’s director of [the] Civil Rights and Equal Employment division issued a letter of determination finding that [the Calhoun County DHR] Board acted in concert with the former Calhoun County director, [Erin] Snowdén, to engage in retaliatory acts against [Johnson-Price], the composition of [the Calhoun County DHR] Board has remained essentially unchanged. Only two of the seven [Calhoun County DHR] Board members are new.
“29. The Defendants’ removal and displacement of [Johnson-Price] from her position as Calhoun County [DHR] director to the newly created position of consultant is a continuation of [the Calhoun County DHR] Board’s historical mistreatment of [Johnson-Price].
“30. Moreover, Defendants’ pretex-tual transfer of [Johnson-Price] violates the transfer provision of § 36-26-24 [Ala.Code 1975] which mandates that a person can only be transferred to a position from one department to another in the same class.
“31. The duties and responsibilities of the position which was created for [Johnson-Price], that of Quality Control Program Consultant, is in no way comparable to [Johnson-Price]’s position of [Calhoun County DHR] director.”
Johnson-Price sought a preliminary injunction to enjoin the defendants from removing her as director of Calhoun County DHR and transferring her to another position while the case was pending. She also sought a judgment declaring the defendants to be in violation of state statutes and administrative rules for removing her from her position as director and transferring her to the position of quality-control consultant. She also sought a judgment declaring that the defendants had acted “arbitrarily and capriciously” in seeking her transfer. Johnson-Price sought “such other further, different or additional relief as [the] Honorable Court may deem just and proper, including but not limited to, an award of attorney’s fees.”
On December 31, 2003, the defendants filed a motion to dismiss, or, in the alternative, a motion for a summary judgment. In their motion, the defendants argued, among other things, that they were entitled to immunity. On March 3, 2004, Johnson-Price amended her petition to include as additional defendants the individual board members of the Calhoun County DHR Board, in their official capacities, and Page Walley, the newly appointed DHR commissioner. On March 11, 2004, the trial court held a hearing on and subsequently denied the defendants’ motion.
On March 22, 2004, the defendants filed a motion with the trial court, seeking permission to appeal pursuant to Rule 5(a), Ala. R.App. P. The trial court denied the motion.[5] The trial of this case was scheduled for April 12, 2004. The defendants filed a petition for a writ of mandamus with this court, and on March 30, 2004, this court granted a stay of the trial court’s proceedings.
The defendants argue that a writ of mandamus should be issued on the ground of sovereign immunity. “It is well established that mandamus will lie to com *1170 pel the dismissal of a claim that is barred by the doctrine of sovereign immunity.” Ex parte Blankenship, 893 So.2d 308, 305 (Ala.2004). Pursuant to Article 1, § 14, of the Alabama Constitution of 1901, the State of Alabama and its agencies are immune from suit in any court. Ex parte Franklin County Dep’t of Human Res., 674 So.2d 1277 (Ala.1996). That constitutional provision “affords the State and its agencies an ‘absolute’ immunity from suit in any court.” Haley v. Barbour County, 885 So.2d 783, 788 (Ala.2004)(citing Ex parte Mobile County Dep’t of Human Res., 815 So.2d 527, 530 (Ala.2001)). The state’s absolute immunity extends to its arms and agencies. Ex parte Tuscaloosa County, 796 So.2d 1100, 1103 (Ala.2000). Accordingly, DHR, Calhoun County DHR, and the State Personnel Department are entitled to sovereign immunity.
A state officer sued in their official capacity is “ ‘absolutely immune from suit when the action is, in effect, one against the state.’ ” Williams v. John C. Calhoun Cmty. Coll., 646 So.2d 1, 2 (Ala.1994)(quoting Phillips v. Thomas, 555 So.2d 81, 83 (Ala.1989)). The wall of im munity for state officers and employees “erected by § 14 is nearly impregnable.” Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala.2002). Section 14 prevents not only a suit against the state, it also prevents a plaintiff from indirectly suing the state by suing a state officer or employee in their official capacity, when “a result favorable to the plaintiff would directly affect a contract or property right of the State.” Mitchell v. Davis, 598 So.2d 801, 806 (Ala.1992)(citing Milton v. Espey, 356 So.2d 1201 (Ala.1978)).
In the present case, Johnson-Price has sued or attempted to sue Fuller, Flowers, Walley, and the Calhoun County DHR Board members (hereinafter collectively referred to as “the state officers”) in their official capacities.[6] Johnson-Price’s petition seeks a judgment declaring that the state officers violated certain statutes and they acted arbitrarily. Immunity pursuant to § 14 is not absolute; it does not apply where the state officer or employee is alleged to have acted “willfully, maliciously, illegally, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law,” Phillips v. Thomas, 555 So.2d 81, 83 (Ala.1989), and it does not protect a state officer or employee in “a suit to compel the performance of a legal duty, a suit to enjoin the enforcement of an unconstitutional law, a suit to compel performance of a ministerial act, or *1171 a suit brought under the Declaratory-Judgments Act,” Mitchell, 598 So.2d at 806.
Our supreme court has recognized that “ ‘[a]ctions brought under the Declaratory Judgments Act, [Ala.Code 1975, § 6-6-220 et seq.], seeking construction of a statute and how it should be applied in a given situation,’ ” are a species of actions that are not “ ‘against the State,’ ” for purposes of § 14. Patterson, 885 So.2d at 142 (quoting Aland v. Graham, 287 Ala. 226, 229-30, 250 So.2d 677, 679 (1971)). “In determining whether an action against a state officer is barred by § 14, the Court considers the nature of the suit or the relief demanded, not the character of the office of the person against whom the suit is brought.” Ex parte Carter, 395 So.2d 65, 67-68 (Ala.1980).
We now turn to whether Johnson-Price’s petition against the state officers regarding her transfer was within one of the above-listed categories of actions that are not violative of the constitutional prohibition against suing the state. The defendants argue that Johnson-Price’s petition goes beyond a mere request to construe a statute and that granting the relief Johnson-Price has requested would prevent her lawful transfer, would directly impact the state’s employment contract with Johnson-Price, and would impermissibly require the expenditure of state funds to re-transfer Johnson-Price to the position of director of Calhoun County DHR.
In Stark v. Troy State University, 514 So.2d 46 (Ala.1987), an assistant professor sued a state university; its chancellor, in his official capacity and in his individual capacity; and its chief executive officer, in his official capacity and in his individual capacity. The assistant professor filed an action seeking a judgment declaring that the university’s policies with respect to scheduling teacher overloads and summer-session pay were binding on the university, an injunction prohibiting the defendants from refusing to abide by the policies, and compensatory damages based on the defendants’ failure to implement the policies. Our supreme court held that the university was immune from suit. The court further held that if the chancellor and the chief executive officer
“have not acted toward the [professor] in accordance with the rules and regulations set by the university, their acts are arbitrary and an action seeking to compel them to perform their legal duties will not be barred by the sovereign immunity clause of the Alabama Constitution of 1901; however, the action for compensatory damages cannot be maintained.”
514 So.2d at 50. In Baggiano v. Miller, 437 So.2d 557 (Ala.Civ.App.1983), this court stated that suits seeking to compel administrative officers to perform ministerial functions are not violative of § 14 and that, once a determination is made that a person is entitled to medicaid benefits, then the agency has no choice but to pay such benefits.
In Ex parte McLeod, 718 So.2d 682 (Ala.1997)(Butts, J., with one Justice concurring, two Justices concurring specially, and one Justice concurring in the result), instructors at a state college sued the college and the college president, in his official capacity, seeking judgments declaring that they were entitled to tenure under the Fair Dismissal Act, § 36-26-100 et seq., Ala.Code 1975, and they filed petitions for writs of mandamus requiring that they be granted tenure and awarded them full-time employment. A plurality of our supreme court held that the instructors’ claims “sufficiently implicate[d] the exceptions to the protection from suit afforded by § 14, and ... that the plaintiffs’ actions against the defendants [were] not barred *1172 by the doctrine of sovereign immunity.” 718 So.2d at 684.
Rigby v. Auburn University, 448 So.2d 345 (Ala.1984), involved a police officer hired by a state university. The police officer sought an injunction to compel the university to pay him a salary as specified in the university compensation plan for his job classification. He sued the university, the university president, the university chancellor, and members of the board of trustees. The trial court dismissed the suit on the ground of sovereign immunity. Our supreme court held that the university was an arm of the state and was therefore entitled to immunity. However, the court held that the state officers and agents, acting in their official capacities, were not immune from suit because the police officer alleged that they had acted in bad faith and beyond their authority.
In the present case, Johnson-Price’s petition seeks a declaration that the state officers acted arbitrarily, capriciously, and in a discriminatory manner in transferring her employment and that that transfer did not comply with the Alabama Merit System Act and the administrative regulations adopted pursuant to that Act. Although Johnson-Price may not ultimately prevail, her claims against the state officers in their official capacities are not barred by § 14.
Based on the foregoing, we grant the defendants’ petition to the extent that it seeks a writ directing the circuit court to dismiss DHR, Calhoun County DHR, and the State Personnel Department. In all other respects, we deny the petition.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
MURDOCK, J., concurs in part and dissents in part, with writing.

. Before the events giving rise to this action, Johnson-Price had apparently brought an action alleging racial discrimination in which DHR was named as a defendant. That action was apparently still pending in 1996, but the materials before us do not indicate when that action was filed, the court in which the action was filed, or the ultimate result of that action.

. In the absence of a right to appeal or an other adequate remedy, a common-law writ of certiorari lies to review the rulings of an administrative board. As the defendants stated in their motion to dismiss, or, in the alternative, motion for summary judgment, " § 36-26-24 provides no legal remedy for an appeal of a transfér.” We note that in Sullivan v. Teague, 424 So.2d 574 (Ala. 1982), a merit-system employee sued the state superintendent of education, in his official capacity, seeking a determination as to whether his transfer from a position as a Vocational Rehabilitation Counselor II to the Division of Disability Determination as a Disability Examiner contravened § 36-26-1 et seq., Ala. Code 1975, and seeking injunctive relief.

. Johnson-Price did not sue Fuller and Flowers in their individual capacities.

. Rule 670-X-4-.01 (State Pers. Dep’t) provides: "Discrimination against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action, because of race, sex, national origin, age, handicap, or any other nonmerit factor, is prohibited.” Specifically, Johnson-Price argues that she has been discriminated against based on a "nonmerit” factor — namely, the defendants' past mistreatment of her and the complaints she filed as a result of that *1169 mistreatment, which she alleges, ultimately led to her being transferred.

. Rule 5, Ala. R.App. P., is limited to those cases within the original appellate jurisdiction of the supreme court. Because this case is within the original jurisdiction of this court and not the supreme court, the trial court correctly denied the motion to appeal from the interlocutory order.

. Walley, the newly appointed DHR commissioner, and the Calhoun County DHR Board members, in their official capacities, were named as additional defendants in Johnson-Price’s March 3, 2004, amended petition. It is unclear from the material submitted with the mandamus petition whether the trial court granted Johnson-Price leave to allow the amendment pursuant to Rule 15(a), Ala. R. Civ. P. Such leave appears to have been necessary because Johnson-Price's amended petition appears to have been filed less than 42 days before the first setting of trial. Nevertheless, we will consider whether Walley and the Calhoun County DHR Board members are entitled to immunity because sovereign immunity is a jurisdictional bar that precludes a court from exercising jurisdiction over the subject matter. Ex parte Alabama Dep’t of Mental Health & Mental Retardation, 837 So.2d 808 (Ala.2002); see also Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013 (Ala.2003)(where university asserted defense of sovereign immunity on its own behalf, the court also considered whether university foundation and university health system were entitled to immunity). We note that with regard to Commissioner Walley, Rule 25, Ala. R. Civ. P., provides that when a public officer is a party to an action in his official capacity, and that officer ceases to hold office, the officer’s successor is automatically substituted. Accordingly, Fuller is no longer a party and Walley is automatically substituted in his official capacity.