982 So.2d 545 (2007)
Ex parte MONTGOMERY COUNTY DEPARTMENT OF HUMAN RESOURCES et al.
(In re Matters of M.K. and C.K.).
2060672.
Court of Civil Appeals of Alabama.
September 28, 2007.
*547 Troy King, atty. gen., and Sharon E. Ficquette and Felicia M. Brooks, asst. attys. gen., Department of Human Resources.
Shannon L. Holiday of Copeland, Franco, Screws & Gill, P.A., Montgomery, for guardian ad litem, Beverly Howard.

PETITION FOR WRIT OF MANDAMUS
MOORE, Judge.
The Montgomery County Department of Human Resources ("the Montgomery County DHR"), the Alabama Department of Human Resources ("the Alabama DHR"), Assistant Attorney General Sharon E. Ficquette, and Assistant Attorney General Felicia M. Brooks (hereinafter collectively referred to as "the petitioners") petitioned this court for a writ of mandamus directing the Montgomery Juvenile Court to, among other things, vacate its order awarding attorney fees against Ficquette and Brooks. We grant the petition in part, deny the petition in part, and issue the writ.

Facts and Procedural History
On October 2, 2006, the petitioners filed with the presiding judge of the Montgomery Juvenile Court a consolidated motion to remove Beverly Howard as the guardian ad litem in several juvenile actions in which the Montgomery County DHR was involved. The petitioners served the motion on Howard and the presiding judge of the Montgomery Juvenile Court and attached evidentiary materials, including a transcript of a hearing in a juvenile proceeding. On October 13, 2006, the presiding judge entered an order denying the consolidated motion and instructing the *548 petitioners that a motion would have to be filed in each individual case and would have to include allegations specific to that case in order to provide the guardian ad litem an opportunity to respond in each case.
Thereafter, on November 3, 2006, the Montgomery County DHR and the Alabama DHR (hereinafter collectively referred to as "DHR"), by and through their attorneys, Ficquette and Brooks, filed a motion to remove Beverly Howard as the guardian ad litem in the two underlying actions in the Montgomery Juvenile Court  case no. JU-04-1068.02 and case no. JU-04-1069.02.[1] In support of the motion, DHR alleged:
"1. That [DHR] has filed a bar complaint with the Alabama State Bar against attorney, Beverly Howard for various concerns and multiple cases in juvenile court in Montgomery County.
"2. It was believed that during the investigation of the said complaint, . . . the juvenile cases involving Beverly Howard could proceed without what [DHR] considers actions of misconduct by Ms. Howard.
"3. Due to the gravity of Ms. Howard's recent retaliatory actions as well as actions impacting children in its permanent or temporary legal custody, this agency's ability to work with children in its custody is being compromised. DHR is legally required by R.C. v. Walley Consent Decree and Alabama law to provide appropriate services to children and their families. Ala.Code § 12-15-71 (1975 and Supp.2005).
"4. In the above styled cases regarding [M.K.] and [C.K.], a hearing was held on September 19, 2006. During the hearing the grandmother of the children testified that she [had been] instructed by Ms. Howard not to report allegations of sexual abuse related to [H.R.], and that if she did Ms. Howard threatened to put her in jail. In addition, Ms. Howard discouraged the father of the children from making any reports regarding the allegations. . . . DHR is mandated to investigate reports of abuse in [order] to protect children and provide for their needs. In this case, it is clear that Ms. Howard who would be considered a mandatory reporter impeded the report being made to the agency in a case in which she is the [guardian ad litem] for the alleged child victim.
"5. [DHR] understands the severity of removing Ms. Howard from these cases. However, since the filing of the bar complaint, it is believed that Ms. Howard will engage in retaliatory conduct against the agency that will impact the children in [these cases], and her conduct merits her removal at this time."
DHR attached excerpts from a September 19, 2006, hearing in both actions to the motion. In that hearing, the grandmother of the children at issue testified as follows:
"Q. [By counsel for DHR:] . . . You made the statement that you needed some guidance from Ms. Howard. What kind of guidance were you looking for, ma'am?
"A. It had to do with getting [M.K.] to sleep at night. Shall I go into the story?
"Q. What I was referring to, ma'am, was when the new [abuse] allegations came up about daddy . . ., you said you *549 called Ms. Howard to get some guidance as to what to do?
"A. I did.
"Q. And could you explain what guidance you were looking for?
"A. Well, first of all I wanted to make a report and then I would do whatever she recommended after that.
"Q. Yes, ma'am. Did it  did it cross your mind you needed to report that to DHR because we in fact are the people that investigate that kind of thing?
"A. I did.
"Q. And did you make a report at that time?
"A. I stated that I thought I should call DHR.
"Q. Who did you state that to?
"A. Ms. Howard.
"Q. And what was her response?
"A. If you do you are going straight to jail.
"Q. Ms. Howard told you if you reported this to DHR you were going to jail?
"A. Yes.
"Q. And at that point did you opt not to contact DHR?
"A. Yes."
In that same hearing, the father of M.K. also testified that he had been told not to involve DHR.
On November 28, 2006, the juvenile court denied the motion to remove the guardian ad litem. DHR moved to reinstate the motion to remove on December 7, 2006. Upon that motion, the court reinstated the motion to remove.
On January 12, 2007, Howard moved the court to sanction the Alabama DHR, Ficquette, and Brooks, alleging:
"1. The [Alabama DHR] has never been a party to this matter.
"2. The State does not have standing to request that counsel be removed as Guardian ad Litem.
"3. The [Alabama DHR], particularly, Sharon Ficquette and Felicia Brooks have been on a mission to have counsel removed from all of her cases and when that failed, they have requested in several different cases with this being one of those cases.
"4. The [Alabama DHR] through their attorneys have maligned counsel for the minor children, to the point of interference with a business relationship with counsel's clients, defamation, slander and libel.
"5. In this matter, the [Alabama DHR] without even being a party to this matter requested a transcript of a prior hearing without the authority or permission of this court. The [Alabama DHR] then attached the transcript of that hearing to the first motion along with other minor children's names. The [Alabama DHR] wasn't even entitled to a transcript and obtained it illegally and without permission of this court.
"6. The [Alabama DHR] is fully aware that [it is] not [a party] to this action. And as such should be punished for illegally obtaining a transcript and sharing same with other individuals.
"7. The [Alabama DHR] by and through the listed attorneys for the State should be held accountable for interfering in a matter in which they are not a party to the case."
On January 16, 2007, the juvenile court held a hearing on the reinstated motion to remove the guardian ad litem. No evidence was taken at the hearing. That same day, the juvenile court entered an order denying the motion to remove the guardian ad litem. The court stated: "[The Alabama DHR's] motion to remove [the guardian ad litem] is based solely on *550 uncorroborated, unsubstantiated testimony from one witness at a previous hearing which this court did not find to be credible. Absent actual evidence of misconduct or improper conduct by [the guardian ad litem], removal is inappropriate. Therefore, [the Alabama DHR's] motion to remove Ms. Howard as [guardian ad litem] is denied." In that same order, the court granted Howard's motion for sanctions. The court ordered the Alabama DHR to pay Howard's attorney fees for defending the motion to remove.
On January 19, 2007, the petitioners filed a "motion for reconsideration" of the court's January 16, 2007, order, arguing, among other things, that the Alabama DHR could not be ordered to pay attorney fees because it is entitled to sovereign immunity. In support of their motion, the petitioners attached an affidavit of Tarilton Benton, the director of the Montgomery County DHR. In his affidavit, Benton testified, in pertinent part:
"I have asked for the assistance of attorneys' representing [DHR] to seek whatever relief may be available through the Courts concerning Ms. Beverly Howard's detrimental behaviors that have inhibited and interfered with the agency's ability to serve the children entrusted to our care by the Family Court of Montgomery County."
Thereafter, on April 17, 2007, the court entered an order stating, in pertinent part:
"The Court held a hearing on January 16, 2007 regarding Ms. Ficquette's and Ms. Brooks's motion to remove attorney Beverly Howard who had previously been appointed as Guardian ad Litem in the above cases. The motion was denied as being without basis.
"It is undisputed that the motion to remove Ms. Howard was filed by attorneys Ficquette and Brooks, who are employed by and agents of [the Alabama DHR]. Neither is directly employed by [the Montgomery County DHR] and [neither] of these attorneys routinely represent [the Montgomery County DHR] in delinquency or dependency cases which come before this Court. In this case, neither attorney Brooks nor attorney Ficquette has been present at any proceeding [other than the hearing on the motion to remove the guardian ad litem]. Former DHR attorney Dennis Sandlin and current DHR attorney Lisa Melvin, who routinely and regularly represent [the Montgomery County DHR] in this Court, appeared at hearings involving these two children. Neither Mr. Sandlin nor Ms. Melvin signed the Motion to Remove, nor did either appear in support of the Motion.
"At the hearing of January 16, 2007, Ms. Ficquette failed to present any evidence of misconduct by the Guardian ad Litem. Ms. Ficquette failed to produce any shred of evidence of improper conduct by the Guardian ad Litem in carrying out the duties entrusted to her by this Court. In fact, Ms. Ficquette failed to show that Ms. Howard had done anything wrong with regard to her representation of the children as to their best interests. The State's Motion to Remove Ms. Howard as Guardian ad Litem was denied, and upon that motion being denied, Ms. Ficquette then moved this Court to allow DHR to withdraw from the dependency cases. That motion was also denied.
"This Court is concerned that attorneys who regularly work with [the Alabama] DHR are inserting themselves into matters routinely handled by Montgomery County DHR attorneys. Whether or not [the Montgomery County DHR] and [the Alabama DHR] are one `huge, happy family,' as asserted, is irrelevant to these proceedings. What *551 is relevant is that Ms. Ficquette and Ms. Brooks do not practice in this Court on a routine basis and have absolutely nothing material to contribute to any determination by this Court with regard to these children. They are not assigned to [these cases] by Montgomery County and they did not appear until they decided to file a motion to remove Ms. Howard as Guardian ad Litem in [these] and other cases. The Court is appalled that these two career attorneys would attach an un-redacted transcript from a juvenile proceeding to this and other motions. These attorneys have breached the confidentiality of the Juvenile Court and believe that they may do so with impunity.
"Counsel for Ms. Howard orally moved the Court to award attorney fees incurred and made necessary because of attorneys Ficquette and Brooks's baseless motion to remove Ms. Howard. The motion to award attorney fees was granted by the Court. Counsel for Ms. Howard subsequently filed an itemized billing statement evidencing that J. David Martin, an attorney with Copeland, Franco, Screws and Gill, P.A., was due fees in the amount of $1,085 (6.2 hours x $175 per hour) and Shannon Holliday, also an attorney with Copeland, Franco, Screws and Gill, P.A., was due fees in the amount of $350 (2 hours x 175 per hour) for their work on behalf of Ms. Howard.
"Attorneys Brooks and Ficquette then filed the inch-thick Motion for Reconsideration of the Court's Order (which once again included the un-redacted transcript of a juvenile proceeding in defiance of the Court's Order). The brief discussed at length that sovereign immunity prevents this Court from issuing sanctions against attorneys Ficquette and Brooks. The brief cites the Constitution of Alabama, ART. I, § 14 as authority which `prohibits actions against state officers in their official capacities when those actions are, in effect, actions against the State.'
"In the State of Alabama, attorneys are licensed by the Alabama State Bar Association after rigorous requirements are met. Said license is renewable annually and is personal to each attorney holding such a license. Impropriety, wrongdoing, or failure to adhere to the Rules of Professional Conduct can result in an attorney's license to practice in this state being suspended and, in severe cases, the attorney can be disbarred from the practice of law. Attorneys Ficquette and Brooks argue that they are immune from sanctions by the Court because they work for State government. Yet, they hold the same license to practice law as Ms. Howard and other attorneys representing various parties in [these cases] and are subject to the same rules. If attorneys Ficquette and Brooks, by virtue of their employment with the State, were immune from sanctions for frivolous actions, malicious conduct, wrongdoing or improper conduct, then such a position would allow any licensed attorney working for any government entity to file baseless, frivolous or malicious pleadings in any case without consequences. It would allow such attorneys to ruin reputations and interfere with opposing attorneys law practice/business.
"This Court believes that sanctions can be levied against attorneys Ficquette and Brooks in their professional/agency capacity. This Court is equally convinced that sanctions can and should be levied against attorneys Ficquette and Brooks in their personal capacities. It is undisputed that Ms. Howard incurred attorney fees, in defending against a clearly a baseless, frivolous *552 and malicious motion filed by attorneys Brooks and Ficquette. It is of no importance whether the Court-Ordered attorney fees are paid by the State Department of Human Resources or by attorneys Brooks and Ficquette personally. Either way Ms. Howard is due an award of attorney fees and State employment cannot exempt any lawyer from complying with the Rules of Professional conduct and the statutes.
"Clearly, the Alabama Supreme Court agrees. In Ex Parte Cranman, 792 So.2d 392 (Ala.2000), the Supreme Court held `. . . Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity (1) when the Constitution or laws of the United States or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of law.' Attorney Felicia Brooks and attorney Sharon Ficquette acted willfully and maliciously and without cause and shall be sanctioned for their conduct.
"Based on the foregoing, it is hereby ORDERED as follows:
"1. That monetary sanctions are hereby imposed on attorney Sharon Ficquette and attorney Felicia Brooks in their personal capacities in the above-styled case[s] in the total amount of $1,435. Said amount shall be paid to Ms. Beverly Howard within 30 days of the date of this Order by attorney Sharon Ficquette and attorney Felicia Brooks. Nothing herein shall prevent [the Alabama DHR] from condoning attorneys Ficquette and Brook's conduct by paying Ms. Howard's attorney fees in the amount of $1,435.00 should [the Alabama] DHR so choose.
"2. That in the event attorney fees are not paid within 30 days, then this Court will enter a judgment against Sharon Ficquette and Felicia Brooks in favor of Beverly Howard with Ms. Howard free to collect in any manner allowed by law.
"3. That interest at 12% per annum shall accrue on said judgment.
"4. That in the event that the judgment is not paid within a reasonable time, upon Motion for Contempt being filed, an Order of incarceration may be issued for attorneys Ficquette and Brooks."
On April 25, 2007, the petitioners moved for a stay of the April 17, 2007, order; in that motion, they also requested that the court vacate the order. In support of their motion, the petitioners asserted, among other things, that, in filing and prosecuting the motion to remove the guardian ad litem, Ficquette and Brooks, on behalf of the Alabama DHR, had been discharging duties imposed on a department or agency by statute, rule, or regulation, and that Ficquette and Brooks had not acted willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of law. In support of that motion, the petitioners attached the affidavit of Tarilton Benton.
On May 1, 2007, the petitioners filed their petition for a writ of mandamus with this court. On the same day, in a bench note, which was memorialized in an order dated May 15, 2007, the juvenile court denied the motion to stay. That order stated:
"This matter came before the Court on the Motion to Stay filed by Attorneys Sharon Ficquette and Felicia Brooks. *553 Based on the assertions contained in said Motion, the Motion to Stay is due to be DENIED.
"[The Alabama DHR] attorneys Sharon Ficquette and Felicia Brooks were afforded due process when the Court held a hearing on their Motion to Remove the Guardian ad Litem. The Alabama Rules of Civil Procedure [require] that evidence in support of any motion be produced at the time of the hearing which is set for the presentation of facts, circumstances and evidence. If evidence is not produced at that time to substantiate accusations or if in fact the Court finds that the accusations are baseless, the attorneys may be subject to appropriate disciplinary action.
"Attorneys Ficquette and Brooks presented no evidence to support their claims filed against the Guardian ad Litem. Appropriate sanctions were entered by this Court in the form of the requirement that the attorneys pay the Guardian ad Litem's attorney fees. (See Rule 11, [Ala. R. Civ. P.], Rule 16, [Ala. R. Civ. P.]; and Alabama Litigation Accountability Act, Code of Alabama, 1975). No due process violation is found as asserted by Attorneys Ficquette and Brooks.
"The Court notes that Attorneys Ficquette and Brooks at the hearing on their Motion to Remove the Guardian ad Litem stated that [the Alabama DHR] and [the Montgomery County DHR] are one unit. However, their Motion to Stay at Paragraph # 10 contradicts their statements made at the hearing. Paragraph # 10 states that Attorneys Ficquette and Brooks are not parties to the case[s] above. Either the State and County Departments of Human Resources are, as they put it, `one big happy family' or they aren't. The State and County cannot be considered one unit for purposes of a hearing and notice of said hearing on one day and they are separate on a different day. The State cannot have it both ways. If the State is not a party, then Attorneys Ficquette and Brooks had no standing to file any pleadings, much less a Motion to Remove the Guardian ad Litem. Language contained in the Motion to Stay confirms this Court's previous ruling of personal liability for Attorneys Ficquette and Brooks for filing baseless, malicious, frivolous motions.
"The Motion to Stay is hereby DENIED."

Standard of Review
"A writ of mandamus is an extraordinary remedy, and is appropriate when the petitioner can show: (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court."
Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001). "[A] petition for a writ of mandamus is an appropriate means for seeking review of an order denying a claim of immunity." Ex parte Butts, 775 So.2d 173, 176 (Ala.2000).

Discussion
In their petition for a writ of mandamus and in the briefs in support of their petition, the petitioners argue that the juvenile court exceeded its discretion in awarding attorney fees against Ficquette and Brooks because, they say, (1) such an award is barred by state-agent immunity, (2) such an award is barred by prosecutorial immunity, and (3) the juvenile court failed to afford them due process. We find the resolution of the first issue raised by the petitioners to be dispositive.
*554 "The long-standing legal principle of state sovereign immunity is written into Alabama's Constitution. `Article I, § 14, Alabama Constitution of 1901, provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Under this provision, the State and its agencies have absolute immunity from suit in any court.'" Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432, 434-35 (Ala.2001) (quoting Ex parte Franklin County Dep't of Human Res., 674 So.2d 1277, 1279 (Ala.1996)). Our supreme court has held that § 14, Ala. Const. 1901, prohibits both the imposition of monetary sanctions against the state and the award of attorney fees against the state. See Haley v. Barbour County, 885 So.2d 783, 789 (Ala.2004) (holding that § 14 prohibited an award of monetary sanctions against a state official in his official capacity); and Ex parte Town of Lowndesboro, 950 So.2d 1203, 1211-12 (Ala.2006) (holding that § 14 prohibited an award of attorney fees against a state agency).
State agents, in their individual capacities, such as Ficquette and Brooks in the present case, are entitled to the protection of state-agent immunity under the following circumstances:
"`[W]hen the conduct made the basis of the claim against the agent is based upon the agent's
"`(1) formulating plans, policies, or designs; or
"`(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"`(a) making administrative adjudications;
"`(b) allocating resources;
"`(c) negotiating contracts;
"`(d) hiring, firing, transferring, assigning, or supervising personnel; or
"`(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"`(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"`(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
"`Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
"`(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
"`(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.'"
Ex parte Butts, 775 So.2d at 177-78 (quoting Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000) (plurality opinion)).
"This Court has established a `burden-shifting' process when a party raises the defense of State-agent immunity. Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala.2003). In order to claim State-agent immunity, a State agent bears the burden of demonstrating that *555 the plaintiff's claims arise from a function that would entitle the State agent to immunity. Giambrone, 874 So.2d at 1052; Ex parte Wood, 852 So.2d 705, 709 (Ala.2002). If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. Giambrone, 874 So.2d at 1052; Wood, 852 So.2d at 709; Ex parte Davis, 721 So.2d 685, 689 (Ala.1998). `A State agent acts beyond authority and is therefore not immune when he or she "fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.'" Giambrone, 874 So.2d at 1052 (quoting Ex parte Butts, 775 So.2d 173, 178 (Ala. 2000))."
Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala.2006).
In the present case, the petitioners argue that they presented evidence indicating that Ficquette and Brooks were "discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner." We agree. According to Ala.Code 1975, § 36-15-1(2), the attorney general  or his assistants  has the duty to "attend to all cases other than criminal that may be pending in the courts of this state, in which the state may be in any manner concerned." Specifically, the legal counsel for [the Alabama DHR] must "devote his entire time to the business of the Department of Human Resources." Ala.Code 1975, § 38-2-4. The Department of Human Resources encompasses the Alabama DHR along with the 67 county departments of human resources. See Williams v. James, 420 So.2d 773, 774 (Ala.1982).
The petitioners submitted the affidavit of Benton, the director of the Montgomery County DHR, that indicates that the actions of Ficquette and Brooks were taken in accordance with the performance of their statutory duties. Therefore, we conclude that the petitioners met their initial burden of showing that the conduct of Ficquette and Brooks in their representation of DHR fits within at least one of the categories enumerated in Ex parte Cranman and adopted by the supreme court in Ex parte Butts.[2]
Because we conclude that the petitioners made the initial showing required under the burden-shifting analysis, we must next determine if Howard met her burden of showing that Ficquette and Brooks "act[ed] willfully, maliciously, fraudulently, in bad faith, [or] beyond [their] authority." The juvenile court found that Ficquette and Brooks acted willfully and maliciously; however, from our review of the petition, the answer to the petition, and the parties' briefs and attachments, we can find no evidence that would support a finding that Ficquette and Brooks acted in such a manner. In fact, based on the materials before us, it appears that the only relevant evidence before the juvenile court was the affidavit of Benton and the transcript of the hearing containing the testimony of the children's grandmother and the children's father, which prompted the filing of the motion to remove.[3] The juvenile court found fault *556 with the Alabama DHR's involvement in the cases; however, Ficquette's and Brooks's involvement in the cases fell within their statutorily prescribed duties, as counsel for DHR. Further, the juvenile court found that the assertion by Ficquette and Brooks that they were not parties to the action contradicted their assertion that the Alabama DHR was a party to the action; however, it is clear that Ficquette and Brooks were simply stating that they were the attorneys for one of the parties, not actual parties.
In addition, the juvenile court found that Ficquette and Brooks did not present a "shred" of evidence in support of the motion to remove the guardian ad litem; however, Ficquette and Brooks presented the testimony of the children's grandmother indicating that Howard had directed her not to report allegations of abuse to DHR and that Howard had told her that she would go to jail if she did report the abuse. The children's father also testified that he had been told not to involve DHR. Finally, the juvenile court stated that Ficquette and Brooks illegally obtained and distributed a transcript of a hearing in the cases; however, the Montgomery County DHR was a party to the cases and, therefore, as attorneys for DHR, of which the Montgomery County DHR is a part, see Ala. Code 1975, §§ 38-2-6(6) & 38-2-8, Ficquette and Brooks were clearly entitled to a copy of the transcript. Further, there was no evidence presented indicating that the transcript was distributed to nonparties to the cases. In fact, the certificate of service on the original consolidated motion to remove reflected that it had been served only on Howard.
Howard argues that Ficquette and Brooks's filing of the bar complaint was without merit and that the mention of the bar complaint in the motion to remove is a violation of the Alabama Rules of Disciplinary Procedure. Those issues are matters that, more appropriately, should be addressed by the Alabama Bar, and we conclude that Howard's assertions do not establish that Ficquette and Brooks "act[ed] willfully, maliciously, fraudulently, in bad faith, [or] beyond [their] authority." Further, Howard suggests that the filing of the consolidated motion before presiding circuit judge of the Montgomery Juvenile Court was procedurally improper and, therefore, shows that Ficquette and Brooks "acte[d] willfully, maliciously, fraudulently, in bad faith, [or] beyond [their] authority." Howard cites no law stating that filing the motion with the presiding judge was improper, and, even if it was improper, we conclude that such a procedural imperfection is insufficient to show that Ficquette and Brooks "act[ed] willfully, maliciously, fraudulently, in bad faith, [or] beyond [their] authority."
Based on the absence of any evidence of willfulness or maliciousness on the part of Ficquette and Brooks, we conclude that Howard failed to meet her burden of overcoming Ficquette's and Brooks's state-agent-immunity defense. Accordingly, the juvenile court erred in awarding attorney fees against Ficquette and Brooks. Therefore, we grant the petition as to this issue and direct the juvenile court to vacate its order awarding attorney fees to Howard.
The petitioners have also raised the following issues: whether the juvenile court erred in denying their motion to remove the guardian ad litem and whether the juvenile court erred in issuing an injunction *557 against them. Because the petitioners did not present any argument or citations to authority relating to these issues, we do not address these issues and the petition is denied as to these issues. See Ex parte Metropolitan Prop. & Cas. Ins. Co., 974 So.2d 967, 972 (Ala.2007). Moreover, with regard to the issue of the denial of the motion to remove the guardian ad litem, the petition was not filed within the presumptively reasonable time after that order had been entered. See Rule 21(a)(3), Ala. R.App. P.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs specially.
BRYAN, Judge, concurring specially.
I fully concur with the main opinion. Please see my special concurrence in Ex parte Montgomery County Department of Human Resources, 982 So.2d 527, 543-45 (Ala.Civ.App.2007).
NOTES
[1] These cases are dependency actions involving allegations of abuse. Case no. JU-04-1068.02 involved M.K., and case no. JU-1069.02 involved M.K.'s sibling, C.K. Before filing the motion to remove, the Montgomery County DHR had already been made a party to these cases.
[2] Moreover, we agree with the petitioners' statement that the list set forth in Ex parte Cranman is not exhaustive and that "it is clear that an attorney acting on behalf of an agency must have discretion in performing his or her duties as to filing pleadings on behalf of the State."
[3] Howard submitted to this court an affidavit containing her own testimony; however, that affidavit was signed after the entry of the juvenile court's last order addressing this issue and after the petition for a writ of mandamus had been filed. Therefore, we do not consider the contents of that affidavit.