MOORE, Judge.
The Alabama Department of Human Resources ("DHR") appeals from a judgment of the Jefferson Circuit Court ("the trial court") to the extent that it ordered DHR to pay attorney's fees for Mark David Allen ("the father"). We dismiss the appeal.
Procedural Background
The father and Christy M. Allen ("the mother") were divorced by a judgment entered by the trial court on October 10, 2003, which ratified an agreement of the parties. That agreement, among other things, provided that the mother would have sole physical custody of the child born of the parties' marriage and that the father would pay $302 per month in child support. On June 23, 2016, the father filed in the trial court a complaint to modify his child-support obligation. In that complaint, the father alleged that he had faithfully paid the child support due under the agreement and that he had, of his own volition, paid child support, in the form of a Social Security disability benefit, in the amount of $640 per month between August 2012 and July 2015. Nevertheless, the father claimed that, in February 2016, the mother or an unnamed individual had informed DHR that the father had not paid child support and that he had accumulated an arrearage of $56,000, which, he asserted, had led DHR to obtain an income-withholding order against him and to intercept his 2015 federal and state income-tax refunds in order to satisfy the arrearage. The father requested that the trial court correct and set aside the allegedly erroneous determination of a child-support arrearage, correct the income-withholding order, require the mother to return the funds withheld from his federal and state income-tax refunds, credit him for all moneys paid to the mother by or on his behalf for child support, modify his child support-obligation, and order the mother to pay his attorney's fees.
On July 26, 2016, DHR filed a motion to intervene, asserting, among other things, that the father was in arrears on his child-support obligation in the amount of $35,906 and that $21,957.35 in interest had accumulated on that arrearage. DHR alleged that it is the state agency designated to prosecute child-support claims, see Ala. Code 1975, § 38-10-3(a), and that the mother had assigned her right to receive child support from the father to DHR, *1265 thereby making DHR a party in interest. See Ala. Code 1975, § 38-10-5. On August 30, 2016, the mother filed an answer and a counterclaim seeking to modify the divorce judgment to increase the father's child-support obligation and to require the father to pay her attorney's fees.
Following a trial on September 27, 2016, the trial court entered a judgment on November 21, 2016, finding the father in arrears for the nonpayment of medical bills incurred by the mother for the benefit of the child in the amount of $144 and entering a judgment against the father in that amount. The trial court also found that the father was not in arrears for other child support, that DHR had been negligent in its research regarding the arrearage allegedly owed by the father before attempting to collect the alleged arrearage, that DHR had encouraged the mother to file a false claim against the father for the alleged child-support arrearage, and that DHR had failed to entertain the father's attempt to provide it with proof of payments regarding the alleged arrearage. The trial court ordered DHR to pay to the father attorney's fees in the amount of $5,000 "for [its] negligence and greed in having [the mother] file a false claim against [the father]." Additionally, the trial court increased the father's child-support obligation to the mother to $513.78 per month. All other relief requested by either party was denied.
DHR filed a postjudgment motion, asserting, among other things, that the trial court had erred in ordering it to pay attorney's fees for the father. The mother filed a postjudgment motion on December 21, 2016. The father filed responses to both postjudgment motions. Following a hearing, the trial court entered an order on January 11, 2017, correcting a scrivener's error in its judgment that is unrelated to the present appeal and denying all remaining relief requested by both DHR and the mother. DHR timely filed its notice of appeal to this court on February 1, 2017.
Facts
The facts pertinent to this appeal are as follows. The mother testified that, following the entry of the divorce judgment, she had received child-support payments from the father "though the court system" through February 2006. The mother testified that she had received payments directly from the father after February 2006, but she could not recall the exact number or amounts of those payments and did not have records documenting those payments. The mother testified that she had later received Social Security disability payments on behalf of the child as a result of the father's disability. The parties stipulated to the introduction of an exhibit showing that Social Security disability payments had been made to the mother for the benefit of the child from August 2012 through June 2015.
The mother testified that, in December 2015, she had gone to DHR's office in order to obtain DHR's assistance in obtaining child support for the months since June 2015. The mother testified that DHR had requested that she fill out documentation regarding the father's child-support-payment history. She testified that she informed DHR that she could not recollect how many payments she had received from the father after February 2006. The mother clarified, however, that she had not informed DHR that she had not received any checks from the father after February 2006. According to the mother, a DHR employee told her that, without more specific information, the father could not receive credit for any of the 78 payments due after February 2006 and before the Social Security payments commenced, but that the father would be given an opportunity to prove his payments later. The mother *1266 further testified that she had presented documentation of the Social Security disability payments to DHR but that DHR had not listed the Social Security disability payments she received as child-support payments. According to the mother, DHR had told her that the Social Security disability payments "didn't apply."
The father testified that he had never missed a child-support payment, having sometimes paid in cash, but mostly having paid by check. He introduced as exhibits a spreadsheet showing his payments, canceled checks dating back to February 2009, and ATM receipts showing cash withdrawals that he claimed had been for his child-support payments. The father testified that he had paid child support every month between February 2006 and January 2009 by check, but, he said, the bank records did not go back that far so he did not have the canceled checks. The father testified that he became disabled in July 2012 and that he began receiving Social Security disability benefits in August 2012, at which point he discontinued making child-support payments because the Social Security Administration had informed him that it would be sending a check to the mother on behalf of the father. According to the father, when the mother informed him that she had not received a check from the Social Security Administration, he paid the mother regular child support by check for the months of September, October, and November 2012. The father testified that he had later learned that the Social Security Administration had paid the mother a lump-sum amount covering August through November 2012, but, he said, the mother had refused to reimburse him the amounts he had paid during that period.
The father eventually recovered from his disability and returned to work. The father testified that he had realized he would have to resume child-support payments and that he had contacted the mother to inform her that he wanted credit for the overpayments he had made before resuming payments. The father testified that, before he was ready to resume making the monthly child-support payments, he had noticed that his paycheck had been garnished in February 2016. The father testified that he contacted DHR about the garnishment and that he had gone to DHR's office to provide DHR documentation showing that he had not missed any child-support payments. The father testified that he had taken canceled checks to DHR's office to prove his payments, but, he said, "the lady at the counter" had told him he was wasting his time.
Lyndie Lewis, the DHR caseworker assigned to the mother's case, testified that DHR had determined that the father was in arrears on his child-support obligation by excluding consideration of any Social Security disability payments for the child or any payments made by the father that the mother could not document or recall. Shunda Coleman, another DHR employee, testified that, as part of an administrative review, Lewis had sent a letter to the father asking for proof of the child-support payments he claimed he had made but that she had no knowledge if the father had attempted to supply such proof. Coleman also testified that it was DHR's policy not to consider Social Security disability payments or other payments received from third parties as child-support payments.
Issues
DHR argues on appeal that the trial court entered a void judgment ordering it to pay attorney's fees for the father. DHR asserts that the trial court lacked subject-matter jurisdiction to award attorney's fees against it because DHR has sovereign immunity, pursuant to Article I, § 14, Ala. Const. of 1901. DHR also asserts that the trial court lacked personal jurisdiction over *1267 DHR because it was never formally made a party to the child-support-modification action. We find the first argument to be dispositive of the case, so we do not address the second argument.
Standard of Review
In this case, the question whether DHR is entitled to sovereign immunity such that it cannot be ordered to pay the father's attorney's fees involves a pure question of law, which question we review de novo. See generally D.P. v. Limestone Cty. Dep't of Human Res., 28 So.3d 759, 764 (Ala. Civ. App. 2009).
Analysis
Section 14 of the Constitution of Alabama of 1901 provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." In Ex parte State Department of Human Resources, 950 So.2d 1165, 1170 (Ala. Civ. App. 2004), this court explained:
"Pursuant to Article 1, § 14, of the Alabama Constitution of 1901, the State of Alabama and its agencies are immune from suit in any court. Ex parte Franklin County Dep't of Human Res., 674 So.2d 1277 (Ala. 1996). That constitutional provision 'affords the State and its agencies an "absolute" immunity from suit in any court.' Haley v. Barbour County, 885 So.2d 783, 788 (Ala. 2004) (citing Ex parte Mobile County Dep't of Human Res., 815 So.2d 527, 530 (Ala. 2001) ). The state's absolute immunity extends to its arms and agencies. Ex parte Tuscaloosa County, 796 So.2d 1100, 1103 (Ala. 2000)."
DHR is considered an agency or arm of the state for the purpose of determining the applicability of sovereign immunity. See Ex parte State Dep't of Human Res., 999 So.2d 891, 896 (Ala. 2008).
"In general, the State is immune from any lawsuit that would directly affect a contract or property right of the State or result in the plaintiff's recovery of money from the State." Latham v. Department of Corr., 927 So.2d 815, 821 (Ala. 2005). Our supreme court has held that "an award of ... attorney fees and expenses impacts the State treasury and divests it of funds in the very way forbidden by [Ala. Const. 1901,] § 14." Ex parte Town of Lowndesboro, 950 So.2d 1203, 1211-12 (Ala. 2006). In Ex parte Bentley, 116 So.3d 201, 204 (Ala. 2012), our supreme court affirmed its unequivocal holding in Ex parte Town of Lowndesboro by holding that " § 14 bars an award of attorney fees and costs even if a plaintiff has prevailed on a claim against State officials in their official capacities for a violation of the State constitution that results in preservation of significant funds in the State treasury." Thus, sovereign immunity generally bars a trial court from ordering a state department, such as DHR, to pay attorney's fees.
Sovereign immunity does not prevent actions for an injunction or damages brought against state officials in their representative capacity and individually when it is alleged that they acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law. See Drummond Co. v. Alabama Dep't of Transp., 937 So.2d 56, 58 (Ala. 2006). In Ex parte Montgomery County Department of Human Resources, 982 So.2d 545, 550 (Ala. Civ. App. 2007), the Montgomery Circuit Court relied on that exception in imposing attorney's fees against DHR's attorneys in an order that was later ordered to be vacated by this court on a petition for the writ of mandamus. In this case, however, the trial court did not adjudicate any claim for an injunction or damages against a DHR official based on his or her fraud, bad faith, unauthorized acts, or mistaken interpretation and application of the law.[1] In its final *1268 judgment, the trial court only ordered DHR, as a state agency, to pay $5,000 in attorney's fees for the alleged negligent and greedy actions of its employees in regard to the mother's child-support-arrearage claim. As our supreme court has unequivocally held, a claim for attorney's fees against a state agency cannot be maintained because of the applicability of sovereign immunity.[2]
We conclude that DHR, as an agency of the sovereign state, was immune from suit for attorney's fees for the father. "A trial court lacks subject-matter jurisdiction if the defendant is immune under the doctrine of sovereign immunity." Ex parte Alabama Dep't of Transp., 978 So.2d 17, 26 (Ala. 2007). "A judgment entered by a court lacking subject-matter jurisdiction is absolutely void and will not support an appeal; an appellate court must dismiss an attempted appeal from such a void judgment." Vann v. Cook, 989 So.2d 556, 559 (Ala. Civ. App. 2008). Accordingly, we dismiss DHR's appeal from the trial court's judgment, albeit with instructions to the trial court that it vacate that portion of its judgment ordering DHR to pay attorney's fees for the father.
APPEAL DISMISSED WITH INSTRUCTIONS.
Thompson, P.J., and Pittman, Thomas, and Donaldson, JJ., concur.

For that reason, we state no opinion as to whether DHR correctly determined that the father had accumulated a child-support arrearage by excluding unproven payments and Social Security disability payments.

Federal law might preempt state law and require a state to pay attorney's fees to an opposing litigant, see Ex parte Town of Lowndesboro, supra, but no federal law was invoked in this case.